Thank you, Your Honor. May it please the Court, Edward Bialak for the Dishonors, the Thomas family. As the Court is aware, this case has considerable longevity. This is personally my third trip to this Court on this case. And as I was telling the Clerk before, when I checked in, there was a sense of déjà vu all over again. The last time I was here on this case, before this Court, it was in this courtroom and it was the en banc panel. Now, as the Court knows, the en banc panel took it upon itself to make a finding concerning the key issue which had to do with family membership as being a particular social group for purposes of asylum. The Supreme Court then reversed that and they tasked the BIA, in my view, with two essential things. First of all, to make the finding of its own. In the first instance, it had only touched on the matter in Acosta. The other circuit courts across the country had suggested, as had several Ninth Circuit cases, that family membership could be a particular social group. So that was the first task. And the BIA begrudgingly came to that conclusion for purposes of this appeal only. I found it perplexing that there wasn't a published opinion by the BIA. And the reason I say that is because it was my take from the Supreme Court's opinion that they were looking for the BIA to provide guidance to other circuit courts in the country, not to mention the IJs who frequently encounter this issue. The second thing the BIA was tasked with by the Supreme Court was to find the facts. Now, I haven't looked at the decision until I was preparing again for this oral argument. So it's been about four years since I looked at the decision. And I was struck when I went through the decision, the BIA's decision on this occasion, that you would be hard-pressed, I was, to find out what specific facts the BIA actually found. What the BIA did was set up a series of hypotheticals, strawman arguments, if you would, and proceeded to knock them over as it reached the conclusion it wanted, which was a denial of asylum. It posited some, now, of course, the BIA was purporting to conduct a de novo review, which was its prerogative, but it still had to review the existing record, which, as I stand here today, is something in excess of 12 or 13 years. There's substantial authority in this circuit, and indeed the Supreme Court itself in Ventura, is authority for no less a proposition that a stale record is no, the record has to be based upon the facts as they exist at the time the BIA is rendering its decision. In my view, what the BIA did, and it's clear from my briefs that I was not enamored with their methodology and their reasoning. They took off, first they tried to do away with the Boss Ronnie family entirely by saying that Boss Ronnie had retired, therefore there was no longer a Boss Ronnie family. Realizing that was not a very good argument, they said, but assuming the family continued, then there was no nexus shown because the individual that threatened Michelle Thomas' life was on a fact-finding mission. He asked if she knew Boss Ronnie, and so it wasn't clear, at least to the BIA, whether the individual was aware of the family relationship. The BIA then jettisons that argument and says essentially that this was a personal dispute between the Strong Shore employees and Boss Ronnie, the racist, and the Thomas family were mere bystanders to this ongoing dispute. I call it a collateral damage argument. The BIA then rejects that argument in favor of the argument that, assuming there was past persecution shown, that the Thomases failed to show that the government of South Africa was unable or unwilling to control the perpetrators. This is the thwarted the police argument that the decision refers to. Not satisfied with that particularly shaky argument because it was clear why Michelle Thomas said she couldn't go visit the employees and try to identify them because she simply couldn't identify them, the BIA then assumes that, and it goes back to Boss Ronnie's retirement, and then here's where we depart completely from any record. The BIA indulges this assumption that because Boss Ronnie is retired, there have been no further incidents since 1998. There is absolutely zero in the record on that. The IJ never went into that. In fact, the key error that I believe the BIA committed here, if I had to capsulize it, is misapplying 8 CFR 1208.13. That regulation clearly sets out the respective burdens of proof in an asylum case. It is clear to me and it was clear to numerous jurists in this court who have looked at the facts that there was past persecution against the Thomas family on account of their family membership. Having established that, the burden fell to the government to rebut that by showing changed circumstances or the possibility of relocation. That's right out of the statute, the CFR. Now, what the BIA did in this case, instead of looking to find something in the record, the IJ never reached the issue of the inability or unwillingness of the government to protect the Thomas family. She respectfully went off on the question of whether or not the government was in fact sponsoring this persecution, which of course is not the test at all. Having failed to reach that, the BIA merely raised the Michelle Thomas thwarted the police argument to try to circumvent that missing gap in the proof of the government. The government also had to show the change in circumstances. And I touched on that, the change in circumstance, according to the BIA, was this retirement of Boss Ronnie and no further incidents, which of course is preposterous. Why is that preposterous? There's no evidence at all as to whether or not there has ever been whatever subsequent interaction between Boss Ronnie. We don't know what happened between Boss Ronnie and these former employees. Boss Ronnie may have reformed, he may have turned into Reverend Ronnie and now is ministering to the poor blacks in South Africa. The point is that's as speculative and evidence-free as the BIA's finding that their conclusion, based on nothing, that there were no further confrontations. The question of relocation is even more bizarre. The only evidence in the record on that- Let me just say that as I read the BIA, and they do go through all these if not this, then this, then this, and you're all the way out to it. So assume family, assume past persecution, and you're into this. I read it and say, well, he's retired, there's no more Boss Ronnie. The whole claim was predicated on his relationship, his coming to the house and his employees at that time. So why isn't that a change? Why is that any different than saying we have a new president when we have those kinds of asylum cases? Well, because we don't know what the facts on the ground were after 1997, really. And if you want to stretch it, 1998, when the evidence that this individual retired came out. Does that mean that there were no further confrontations? We don't know that. Suppose Boss Ronnie opened up a fast food franchise where he could hire a lot of poor blacks that he could further abuse in his own fashion. Let me ask a practical matter. The government, they show he's retired, he's no longer there. The government, you believe, has the burden to show that there were no further incidents? Well, the government has the burden on an individualized basis to show how the circumstances have changed so that it would mitigate against the well-founded fear of future persecution, which is kicked off by the past persecution. Well, okay, that's easy to say. Now, how does that work? Because the government would say, well, the whole perpetrator, the whole person around who this is predicated, and we gave them all the benefit of the doubt, he's no longer on the scene. So what would the government need to do, in your view, to meet its burden? Well, there are a whole panoply of possible circumstances, but I think that what would the government need to do here to show, in addition to not being Boss Ronnie anymore and being retired for this period of time 10 years ago, what would they need to show to meet that burden? Well, I think, among other things, they could find out whether there had been additional incidents involving Boss Ronnie or Ronald Thomas, as he became upon his retirement, and these individuals, and that's something. Why isn't that Petitioner's burden? Well, Petitioner is not in a position, Your Honor, to investigate what the police may have done or found out about those incidents. The Petitioners left the country in 1997, and I think that's a rather difficult burden for the Petitioners to establish. Why isn't that their burden? The government says, look, he was in this position where he abused people, he's quit that position, that's a changed circumstance. If you think he's now doing something else that abuses people, it's up to you to present evidence that this change doesn't have the effect that one can infer it does. Well, actually, I can tell, Your Honor, and this is not something of record, but this case engendered... You can't really tell us if it's not on record. Well, that's my point. This case, suffice it to say, has engendered considerable notoriety in South Africa. So it should have been fairly easy to get the evidence. You write to people, you have correspondence, you have... But in what forum were we to present the evidence that had a bearing on this? The BIA took the case under submission. Motion to reopen? Well, I think the statutory period for that had passed, but... Well, it always has. Right. Almost always. Right. So I don't think that was an available option. The other... Why not? Why not? As an extraordinary circumstance or something. I don't know what these events were, but let's just assume they were... I understand. They were really pretty telling in some way. Then there's a way to advise the BIA of that and ask for a remand to the IJ. I will be quite candid with the Court, and that is that I fully anticipated the BIA to remand on its own for making the fact-finding, because the record was so stale at the time it was under consideration by the BIA. And the main thing the BIA was to determine was the issue of family membership as a particular social group. Did you request that? Well, we requested... I don't recall specifically requesting it. We requested oral argument. We requested that they convene an en banc panel. You didn't request a remand? No, not specifically. You could have done that. We addressed... You could have done that, right? Well, I could have. Remember there were two amicus also who filed briefs before the BIA, and we all were of the opinion that the key issue was that the BIA was tasked with resolving was the family membership issue. But then they also were specifically told, and you have to make all the other collateral findings... Correct. ...rigored by the asylum statute. Right. So even if you felt more confident that you might win on the family issue, you still had these police reporting problems, government, nature of the incidents, you know, the poison dog was a small thing, the other things were big things. All that was still on the table before the BIA, right? Yes, but the point being that the posture of the case was once the BIA... Once the IJ had found the persecution to be on account of the family membership, she just didn't recognize it as a particular social group, the government had the burden. And what you're suggesting is that perhaps we should have taken the burden upon ourselves to do what the government didn't do in the first instance in the original record, which was to satisfactorily show that the conditions changed. No, I don't think it's your burden. I think the government has the burden, but once they come forward, and you disagree with that, I mean, if they come forward with a plausible basis that could be supported by substantial evidence, then it does seem to me that the petitioner has to kick in, either having asked the BIA to remand or to say, here's an affidavit of changed circumstances, and therefore that's the reason we really need a remand here. Well, I think, Your Honor, hit the issue on the head, which is there has to be substantial preponderance of the evidence on that, and the fact that Boss Ronnie retired and that there's no evidence one way or another as to further confrontations between he and the employees. Well, but, you know, it's like, let's take Guatemala, for example. They end the Civil War, and we say, okay, well, that's a pretty big change of circumstances. The person in your shoes would be arguing, yeah, but, you know, there could be things happening down the road we don't know about. But if you read all those cases, they say, look, that was pretty major. They end the Civil War. They come to the peace agreement, and then we leave it. So maybe what we're arguing or we're trying to figure out is when has the government done enough such that the petitioner needs to do something, because it's clearly not your burden. Well, I agree with that. I mean, the reality is, at least as I look at it, I mean, as far as if you assume for a moment that there was not sufficient evidence to establish past persecution, what the government did here is really very little different than the cases we get from India for the change of the prime minister, the cases we get from Indonesia with respect to the persecution of Christians, the cases we get from Guatemala. I mean, there are literally hundreds and hundreds of these cases, and the government has, in many instances, done the very thing it's done here, successfully, as far as the second prong, as far as future persecution. You're saying, if I understand you correctly, that the record is stale, and the fact that this man, who is the whole focus of your case, the fact that he's not in power anymore and so on doesn't make any difference. But we don't know. Again, I understand you don't know, but people say that all the time in Guatemala. I don't know what's going to happen.  That has not been successful for them. It's not been successful for the Sikhs. Now they have a new Sikh prime minister, and they claim that they had this previous provincial governor and so on. It happens all the time. Ethiopia, the same kind of thing. Can you help me why this case, other than it's a different country, why the principle is any different? Well, this doesn't involve a change in government, for example. No, I understand. I'm talking about if it was the government and the head of the government, or in Nigeria or something, a local leader that was the persecutor, and then they're out of power. The same kind of thing here. It's not the government directly, but this person is gone. He's the focus of your review here. We don't know what he's going to do, but the government doesn't know, like in Nigeria, what the former provincial warlord is going to do either. But the government meets its burden by doing that, or at least has been so found in our case law. I know you're throwing sand all over this stale evidence and so on and how insufficient it is. I'd love to be some help here, but I'm struggling with why your case is any different than these cases that I've mentioned. Because aside from the staleness of the record, the one... For example, suppose Boss Ronnie decided to un-retire. That's a changed circumstance. Now, did we have the burden to show that he un-retired? Perhaps we would, but my position is the government didn't meet its initial burden. Well, if the entire focus of your case was Boss Ronnie, and the government says, here's this evidence that shows this guy's retired, his family's no longer involved in this, there's no evidence, there's any contact with your family at all for ten years or whatever, they put forth some evidence, don't you have an obligation, as Judge McEwen suggested, to respond to that in some way? Well, but this wasn't a serious argument that was made. This was the BIA reaching for something that there was nothing in the record to support, which is that the change in title from Boss Ronnie to Ronald Thomas, he still remained a racist pig. There were still hard feelings, no doubt, between his former employees and him. And without knowing what, you know, whether these people have forgiven and forgotten or whatever, that's something that the government was supposed to, I would maintain, that was the government's burden, and they simply didn't meet it. Not your best shot? Well, I can't make it up. No, no, I understand. Is that your best shot? Yes. Okay. Okay, thank you. We'll hear from the government. Thank you, Your Honor. May it please the Court, my name is Jeffrey Lees, appearing on behalf of the Attorney General. Here, the Board denied petitioners' application for asylum on numerous different grounds, each of which is sufficient to deny the application for asylum. The statute of review, or the standard of review here, is the compelling evidence standard. Petitioners must essentially find that the evidence compels the conclusion contrary to the Board's finding on each of these separate issues. If they argue that any of them has still failed their case. Here, there's substantial evidence that the petitioners failed to demonstrate past persecution. There's the fact that in order to demonstrate asylum, already eligible for asylum, you must have... And let me just, to be clear, the opposing counsel has spent much of his time basically saying that let's focus on the future situation, but the BIA did find that there was no past persecution, right? Correct. Okay. And our argument is that that's dispositive. So the burden then does not shift to the government with respect to future persecution, right? There's no past persecution. There's no presumption of a well-founded fear. Therefore, it's not rebutted by the government. Turning to the issue of whether the government is unable or unwilling to control, here the petitioners failed to demonstrate that the government, specifically the police in this case, were either unwilling or unable to control the strong shore workers. There were the four incidents of harm, the five incidents, with the dead dog, the vandalism of the car in the home, the threat against the petitioner, and then the attempted kidnapping of the daughter. The dog issue was reported to the police. There wasn't anything they could do. They came out, investigated, nothing they could do. Turning to the vandalism, same thing. Police come out. They patrol. They take fingerprints. There's nothing they can do. Now, the issue with the threat, it was never reported to the police. If you don't report an incident to the police, well, then the police can't protect you. You're not availing yourself of their protection. And the last incident was the attempted kidnapping of the petitioner's daughter. They called the police. The police came out. The police wanted to go investigate strong shore, and the petitioner is the one who said, no, don't do it. I don't want to get involved with that. So, again, it's the police are actually not only are they not standing idly by or allowing this to happen, but they're taking an active role, and the petitioner just decided that she did not want to be involved in that. Because they didn't demonstrate past persecution, and that's just positive, the remaining issues are essentially moot. If there's any questions from the panel, I'd be happy to entertain them, but they need not be reached. Okay, thank you. Thank you.
judges: Kozinski, McKeown, Smith